UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMUEL H. MWABIRA-SIMERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-441 (RWR) |
| | ) | |
| HOWARD UNIVERSITY *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Plaintiff Samuel H. Mwabira-Simera filed a *pro se* discrimination complaint against Howard University and three individuals, Patrick Swygert, former President of the University, Orlando Taylor, dean of the University's graduate school, and Errol Noel, professor and chair of the University's department of civil engineering and also Mwabira-Simera's academic program advisor. The University has moved post-discovery for summary judgment. Because there are no material facts in dispute and the University is entitled to judgment as a matter of law, the University's motion will be granted, and all other pending motions will be denied as moot.

### BACKGROUND

Mwabira-Simera, a Ugandan male who was a torture victim in Uganda and suffers from related post-traumatic stress disorder ("PTSD"), matriculated in the University's civil engineering program for one semester in Spring 1997, and then again for four semesters from Spring 2000 through Fall 2001. Defs.' Mot. for Summ. J. ("Defs.' Mot."), Defs.' Stmt. of Material Undisputed Facts ("SMUF") ¶¶ 4-5. In January 2002, Taylor, in his role as dean of the graduate school, sent a letter dismissing Mwabira-Simera for poor academic performance. *Id.*,

- 2 -

Ex. 24, Decl. of Orlando L. Taylor (Aug. 17, 2007) ("Taylor Decl.") ¶ 15 & Ex. B.  Mwabira-Simera contends he was dismissed as a result of unlawful discrimination.  Specifically, he alleges national origin and disability discrimination, a hostile environment, and retaliation, and he asserts claims under Titles VI and VII[1] of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* and 2000e *et seq.,* Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*.  *See* Am. Compl. ¶¶ 11-45.  In addition, the amended complaint mentions in passing § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and purports to assert claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §701 *et seq*., and the Due Process Clause of the Fifth Amendment.  *See* Am. Compl.¶ 49.  It also asserts an "abuse of process" claim, but is unclear whether this is intended as part of the constitutional claim or as an independent common law claim.  *See id.* ¶¶ 46-48.  In an abundance of caution, it will be analyzed as both.  Mwabira-Simera seeks $5 million in compensatory damages and $15 million in punitive damages.  *Id.* at 20-21.[2]

---

[1] Mwabira-Simera and the University have not had an employee-employer relationship since 2001 or earlier.  SUMF ¶ 18.

[2] Although Mwabira-Simera contends in his opposition that he also alleged violations of Title I of the ADA, 42 U.S.C. § 12112 *et seq.*, violations of 42 U.S.C. §§ 1981 and 1983, and two criminal statutes, *see* Opp'n at 5, in fact, his amended complaint contains no such allegations.  At the very most, the amended complaint states that "Defendant is responsible under law for all acts [under color of state law] performed by Defendants . . . by virtue of the doctrine of *respondeat superior* . . . ."  Am. Compl. at 17.  Even under the liberal pleading standard accorded a *pro se* plaintiff, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), this single use of the phrase "under color of state law" in this context does not provide adequate notice to the University that Mwabira-Simera means to allege a violation of 42 U.S.C. § 1983.  In any event, a claim brought under § 1983 against a non-governmental entity fails to state a claim upon which relief may be granted.  Because the defendant was not on notice of these claims prior to completing discovery, the claims Mwabira-Simera mentions in his opposition that he did not set

- 3 -

Despite the lengthy submissions on record, the material facts are relatively few and not in genuine dispute.  The University's graduate school has published rules and regulations, one of which mandates that a student be dropped from a course of study when he or she receives more than nine credit hours of grades C or below.  Defs.' Mot., SMUF ¶ 6-7 & Ex. 1 at 11.  It also provides that a program's "graduate faculty can recommend the dismissal of a student who demonstrates an inability to perform satisfactorily at the graduate level.  *Id.*  In a total of four semesters of course work, Mwabira-Simera earned five C's and one D, but some of the grades were awarded late because he did not complete and submit the work during the course term.  *Id.,* SMUF ¶¶ 21-30, 36-40 (earning one C for a course taken in Spring 1997, two C's and one D for courses taken in Fall 2000, and two C's for courses taken in Spring 2001).  Mwabira-Simera proposed a thesis project that his academic advisor, Noel, disapproved as not within the sphere of either the advisor's expertise or the student's course of study, flawed in its design and not advisable in light of the student's preparation in mathematics.  *Id.,* SMUF ¶¶ 44-47.  After Mwabira-Simera informed the associate dean of the graduate school that he had asked a junior faculty member from a different university to chair his thesis committee on the disapproved thesis project, the associate dean asked the graduate faculty of the civil engineering department to make a recommendation on how to proceed with Mwabira-Simera's matriculation in the program.  *Id.,* SMUF ¶¶ 67-71.  On November 19, 2001, the civil engineering program graduate faculty committee recommended that Mwabira-Simera be dismissed due to his "sustained unsatisfactory academic performance" and his unwillingness to follow the advice of his academic program advisor.  *Id.,* SMUF ¶¶ 72-73.  Taylor, after reviewing the record and concurring with

---

forth in his amended complaint will not be considered.

- 4 -

the graduate faculty's recommendation, notified Mwabira-Simera by letter dated January 25, 2002, that he was no longer eligible to pursue his course of study in the civil engineering graduate program. *Id.,* SMUF ¶¶ 79, 81-84. In its entirety, that letter stated

> This is to inform you that a review of your academic record revealed during your tenure in the Graduate School you have accumulated an excess of five (5) grades below B. The Graduate School regulation[] states that:
>
> "A student will be dropped when he or she receives more than nine (9) hours of "C" or a "C" grade in more than two (2) courses where at least one of the courses is for four (4) or more credits and where the total credit hours of "C" is greater than nine (9) hours."
>
> (See The Graduate School of Arts and Sciences, Rules and Regulations for the Pursuit of Academic Degrees, Section 2. Grades and Academic Status.)
>
> Therefore, in keeping with Graduate School Regulations, I am writing to inform you that you are no longer eligible to pursue further study in the Graduate School.
>
> I wish you success in your future endeavors.

*Id.*, Taylor Decl. ¶ 15 & Ex. B. The notification letter was sent certified mail return receipt requested, and was received and signed for by him on or before February 5, 2002. *Id.,* Taylor Decl. ¶ 16 & Ex. C.

Although it is undisputed that Mwabira-Simera appealed his dismissal through the University's grievance system and sought readmission to the graduate program, there is no evidence in the record that Mwabira-Simera filed an administrative claim of discrimination with either the U.S. Equal Employment Opportunity Commission ("EEOC") or the District of

- 5 -

Columbia's Office of Human Rights ("DCOHR") as a result of the University's action. On February 4, 2005, the clerk of court received the plaintiff's *pro se* complaint for filing.

## DISCUSSION

Where a defendant challenges an asserted claim because it fails to state a claim upon which relief may be granted, and matters outside the pleadings have been presented to and not excluded by the court, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d). A motion for summary judgment must be granted if the pleadings and evidence on file show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). In considering whether there is a triable issue of fact, a court must draw all reasonable inferences in favor of the non-moving party. *Liberty Lobby,* 477 U.S. at 255. The party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial[,]" Fed. R. Civ. P. 56(e)(2), that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1241 (D.C. Cir. 1987). The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, any factual assertions in the movant's affidavits will be accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992).

As an initial matter, several of the claims asserted must be dismissed because they are patently inapplicable on the facts presented and therefore fail to state a claim upon which relief

may be granted.  Neither the University, which is a private educational institution, nor any of the individual defendants are subject to suit under the APA, Title II of the ADA, or the Due Process Clause of the Fifth Amendment.  The APA applies only to agencies of the federal government.  *See* 5 U.S.C. §§ 701(b)(1) ("'agency' means each authority of the Government of the United States,") and 704 (providing for judicial review of "final agency action").  Title II of the ADA applies only to "public entities," which is expressly defined to include only "(A) any state or local government; (B) any department, agency, or special-purpose district, or other instrumentality of the state or states or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority [as defined elsewhere]." 42 U.S.C. § 12131.  The Fifth Amendment's Due Process Clause applies only to the actions of agents of the federal government (and the Fourteenth Amendment's Due Process Clause applies only to the actions of agents of state governments and municipalities).  Accordingly, as the defendants in this suit are not proper defendants, the claims asserted under the APA, Title II of the ADA and the Due Process Clause, including any intended allegation of a constitutional abuse of process, must be dismissed because they fail to state a claim upon which relief may be granted.

A common law claim for abuse of process is also inapplicable in this case.  Such a claim arises when one party has misused or perverted the court system against another.  *Geier v. Jordan*, 107 A.2d 440, 441 (D.C. 1954) (distinguishing the tort of abuse of process from the tort of malicious prosecution).  Here, the defendants did not invoke the court system at all in their dealings with Mwabira-Simera, let alone pervert it.  Therefore, Mwabira-Simera cannot maintain a common law abuse of process claim against any of the defendants.

- 7 -

In addition, none of the individual defendants is subject to suit under any of the anti-discrimination statutes asserted.  "[T]he text of Title VI [of the Civil Rights Act of 1964] . . . precludes liability against . . . individuals." *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1169-70; *see also Goonewardena v. New York,* 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) ("Title VI claims cannot be asserted against an individual defendant[.]").  Similarly, "Title VII does not impose liability on individuals in their personal capacity." *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 185 (D.D.C. 2008) (citing *Gary v. Long,* 59 F.3d 1391, 1399 (D.C. Cir. 1995)).  "Claims under section 504 of the Rehabilitation Act of 1973 . . . against individuals in the individual capacity are foreclosed[,]" and "[i]ndividuals are not proper defendants under Title IX." *Goonewardena,* 475 F. Supp. 2d at 327*,* 330.  Therefore, the three individual defendants will be dismissed from this lawsuit because the plaintiff has not asserted claims as to them upon which relief may be granted.

Mwabira-Simera also has not stated a claim upon which relief may be granted under Title IX against the University.  Title IX provides that "[n]o persons in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  Title IX does not address race or disability discrimination, which are the only types of discrimination the plaintiff alleges in his amended complaint or attempts to support in his subsequent submissions on the record.  Therefore, the Title IX claim will be dismissed because it also does not state a claim upon which relief may be granted.

The University has raised the statute of limitations affirmative defense, arguing that all of the discrimination claims are time-barred.  Where a federal statute does not specify a period of

- 8 -

limitation after which a claim is time-barred, federal law requires applying the local statute of limitation for the most-analogous injury. *See Wilson v. Garcia,* 471 U.S. 261 (1985) (approving analogizing a § 1983 claim as one for personal injury and applying the local statute of limitation). Under District of Columbia law, a violation of a federal anti-discrimination law is subject to the three-year limitation period applicable to a claim for personal injury. *See* D.C. Code 12-301(8). Thus, all of the federal discrimination claims asserted in the amended complaint are subject to dismissal if not brought within three years of the accrual of the alleged injury. *See Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 238 (D.D.C. 2007) (Title VI and Title IX); *Long v. Howard Univ.,* 512 F Supp. 2d 1, 11-12 (D.D.C. 2007) (Rehabilitation Act and ADA). Although Title VII claims have the same statutory three-year limitation period, they have an effective limitation period that is far shorter because federal law required Mwabira-Simera to file an administrative charge of discrimination within 300 days of the time he knew of the University's adverse action. 42 U.S.C. § 20003-5(e)(1); *Akonji v. Unity Health Care, Inc.*, 517 F. Supp. 2d 83, 90-91 (D.D.C. 2007). If that 300-day deadline is missed, a plaintiff has no recourse under Title VII in federal court. *See Iweala v. Operational Technologies Servs., Inc.,* 634 F. Supp. 2d 73, 81 (D.D.C. 2009).

Title VII applies only to employers. *See* 42 U.S.C. § 2000e-2 (a) ("It shall be an unlawful employment practice for an employer . . . ."). Mwabira-Simera's relationship to the University as an employee ended in 2001 at the latest. Defs.' Mot., SMUF ¶ 18. Any claims he brings under Title VII are thus now time-barred. The University also asserts that Mwabira-Simera did not exhaust his administrative remedies prior to filing suit. There is no evidence in the record that Mwabira-Simera exhausted his administrative remedies as Title VII requires. Although

Mwabira-Simera pleads that he exhausted his administrative remedies, and states that documentary proof of having done so is appended to his amended complaint, *see* Am. Compl. at 6 & App., no documentary proof of exhausting an administrative complaint is anywhere to be found in this voluminous record.  The University has filed a declaration affirming that the "University has no record of receiving a Notice of any Charge of discrimination filed by Mr. Mwabira-Simera with the EEOC against the University relating to any of the claims asserted by Mr. Mwabira-Simera in this litigation."  Defs.' Mot., Ex. 31, Decl. of Leroy T. Jenkins, Jr., Esq. (Aug. 22, 2007) ¶¶ 3-5.  If Mwabira-Simera had filed a discrimination charge with either the EEOC or the DCOHR, the University would have received a Notice of Charge, because "[u]nder a formal work-sharing agreement, filing a formal charge with the EEOC satisfies any requirement to file a formal charge with the District's OHR, and vice-versa."  *Cruz-Packer,* 539 F. Supp. 2d at 189.  Accordingly, on this record, there is no dispute about the material fact that Mwabira-Simera did not exhaust his administrative remedies before filing suit, and the University is entitled to summary judgment on the Title VII claims.

The University argues that all of the other discrimination claims are time-barred by the statutory three-year limitations period.  Its argument is based on the mistaken impression that Mwabira-Simera filed his complaint on March 2, 2005.  When a *pro se* plaintiff submits an application to proceed *in forma pauperis* along with the complaint*,* the opening of the case is delayed until the application is approved.  Therefore, the date on which the complaint was received by the clerk of court for filing is the critical filing date for statute of limitations purposes.  In this case, Mwabira-Simera submitted his complaint to the clerk of court for filing on February 4, 2005.  Because the record evidence establishes that Mwabira-Simera learned of

his dismissal by letter from the University, and that Mwabira-Simera had received the letter by February 5, 2002, he had three years, until February 4, 2005, to file his complaint. Thus, his filing of the complaint was timely as to his dismissal. Causes of action arising from any other act of discrimination alleged to have occurred in the months or years preceding his receipt on February 5, 2002, of the letter notifying him that he was dismissed are time-barred. Furthermore, the University's refusal to reverse or alter its decision in the aftermath of its dismissal notification is not what triggers the limitations period. *Delaware State College v. Ricks,* 449 U.S. 250, 261 (1980) ("The existence of careful procedures to assure fairness . . . should not obscure the principle that limitations periods normally commence when the . . . decision is made.").

At this point, then, only the Title VI and Rehabilitation Act[3] claims against the University remain, and their survival depends in the first instance on showing that the dismissal was the result of unlawful discrimination. To defeat the University's explanation that it dismissed him for an unsatisfactory academic performance, Mwabira-Simera must "prove by a preponderance of the evidence that the legitimate reason[] offered by the defendant [was] not its true reason[], but [was] a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253

---

[3] Even under a generous reading of the complaint and the subsequent submissions by Mwabira-Simera, it does not appear that he alleges any disability discrimination after the 2000-2001 academic year. On this basis, then, the University would be entitled to judgment as a matter of law because claims arising from acts occurring before February 4, 2002 are time-barred. However, in an abundance of caution, the disability claims will be analyzed as if Mwabira-Simera had straightforwardly alleged that his dismissal was retaliation for some protected activity or the culminating act of a series of events constituting a hostile environment related to his alleged disability. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002) ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). The Court expressly does not reach the question of whether the alleged disability is a disability for purposes of the Rehabilitation Act.

(1981). "At that point, the plaintiff can survive summary judgment only by showing that a reasonable jury could conclude that he was terminated for a discriminatory reason." *Jackson v. Gonzales,* 496 F.3d 703, 707 (D.C. Cir. 2007). On this record, no reasonable jury could conclude that Mwabira-Simera was terminated for either his national origin or his PTSD as opposed to having earned more grades below "B" than the University's graduate school regulations permitted. Mwabira-Simera has not submitted any evidence to show that his academic performance was mere pretext for unlawful discrimination, nor has he submitted any evidence to show that he was treated differently than others similarly situated. Accordingly, his discrimination claims cannot survive summary judgment.

CONCLUSION

For the reasons stated, the University's motion will be granted, all other pending motions will be denied as moot, and judgment will be awarded to the University.

A separate order accompanies this memorandum opinion.

SIGNED this10th day of March, 2010.

/s/
RICHARD W. ROBERTS
United States District Judge